**No. _____**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

RIGHT TO LIFE OF IDAHO, INC.,

*Petitioner*,

v.

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO,

*Respondent*,

and

LOURDES MATSUMOTO, NORTHWEST ABORTION ACCESS FUND, and
INDIGENOUS IDAHO ALLIANCE,

*Real Parties in Interest*.

On Petition for a Writ of Mandamus to the United States District Court for the
District of Idaho (No. 1:23-cv-00323-DKG)

## IN RE: RIGHT TO LIFE OF IDAHO, INC.

James Bopp, Jr., Ind. Bar No. 2838-84
Joseph D. Maughon, Va. Bar No. 87799
THE BOPP LAW FIRM, PC
The National Building
1 South 6th Street
Terre Haute, Indiana 47807
Telephone: (812) 232-2434

*Counsel for Right to Life of Idaho, Inc.*

# Table of Contents

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Relief Sought . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Issues Presented . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Underlying Facts and Procedural History . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Argument for Issuance of Writ . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    I. The Order contains numerous clear errors. . . . . . . . . . . . . . . . . . . . 7
        A. The Order errs in requiring a privilege log to assert RLI's
            privilege. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
        B. RLI's declaration was more specific than that in *Perry*, was not
            conclusory. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
            1. *Perry* found a less specific declaration sufficient. . . . . . . 11
            2. The Naugle Declaration is not general or conclusory. . . . . 12
        C. The lower court imported protective order law into a motion to
            quash case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
        D. Challengers did not satisfy their burden to overcome RLI's
            privilege. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
            1. The documents sought are not relevant under any
               analysis. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
            2. The Order imposes an undue burden. . . . . . . . . . . . . . . . . 20
        E. The Revised Demand does not fix the overbreadth. . . . . . . . . . . 22
    II. RLI has no other means of relief. . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
    III. The Harm Factor is satisfied. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
    IV. The Repeated Error and New Problem Factors are satisfied. . . . . . . . 29

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

# Table of Authorities

**Cases**

*Admiral Ins. Co. v. U.S. Dist. Court*, 881 F.2d 1486 (9th Cir. 1989) . . . . . . . 24-26

*Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021) . . . . . . . . . . . . . . 5, 14

*Anonymous Online Speakers v. United States Dist. Court*, 661 F.3d 1168 (9th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Attorney Gen. of N.Y. v. Soto-Lopez*, 476 U.S. 898 (1982) . . . . . . . . . . . . . . . . . 19

*Bresler v. Wilmington Tr. Co.*, No. PJM 09-2957, 2013 U.S. Dist. LEXIS 201311 (D. Md. Aug. 8, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Broadband iTV, Inc. v. Hawaiian Telecom*, No. 15-mc-80053 HRL, 2015 U.S. Dist. LEXIS 51131 (N.D. Cal. Apr. 17, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Brock v. Local 375, Plumbers Int'l Union*, 860 F.2d 346 (9th Cir. 1988) . . . . . . 27

*Buckley v. Am. Constitutional Law Found.*, 525 U.S. 182 (1999) . . . . . . . . . . . . . 6

*Buckley v. Valeo*, 424 U.S. 1 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Cheney v. United States Dist. Court for D. C.*, 542 U.S. 367 (2004) . . . . . . . . . . 2

*Fellowship of Christian Athletes v. San Jose Unified Sch. Dist.*, 82 F.4th 664 (9th Cir. 2023) (en banc) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Garrity v. Gov. Bd. of Cariños Charter Sch.*, No. 20-340-MV/KK, 2021 U.S. Dist. LEXIS 133760 (D.N.M. July 19, 2021) . . . . . . . . . . . . . . . . . . . 16

*Green Tech. Lighting Corp. v. Insure Idaho, Ltd. Liab. Co.*, No. 1:17-cv-00432-DCN, 2023 U.S. Dist. LEXIS 58520 (D. Idaho Mar. 31, 2023) . . . . . . . . 13

*Hall v. Balt. Police Dep't*, No. 1:24-1137-RDB, 2025 U.S. Dist. LEXIS 26704 (D. Md. Feb. 13, 2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*In re von Bulow*, 828 F.2d 94 (2d Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Jordan v. Comm'r, Miss. Dep't of Corr.*, 947 F.3d 1322 (11th Cir. 2020) . . . . . 16

*Kerr v. United States Dist. Court for N. Dist. of Cal.*, 426 U.S. 394 (1976) . . . . . 2

*Kirkland v. United States Bankr. Court for the Cent. Dist. of Cal.
(In re Kirkland)*, 75 F.4th 1030 (9th Cir. 2023) . . . . . . . . . . . . . . . . . . . . . . . . 7, 30

*Las Vegas v. Foley*, 747 F.2d 1294 (9th Cir. 1984) . . . . . . . . . . . . . . . . . 18-20, 24

*Matsumoto v. Labrador*, 122 F.4th 787 (9th Cir. 2024) . . . . . . . . . . . . . . . . . . . . 4

*McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334 (1995) . . . . . . . . . . . . . . . . . . 6

*Mi Familia Vota v. Fontes*, 129 F.4th 691 (9th Cir. 2025) . . . . . . . . . . . . . . . . . 18

*Mohawk Indus. v. Carpenter*, 558 U.S. 100 (2009) . . . . . . . . . . . . . . . . . . . . . . . . 1

*NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449 (1958) . . . . . . . . . . . . . . . 5, 8

*Orsini v. O/S Seabrooke*, 247 F.3d 953 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . 12

*Perry v. Schwarzenegger*, 591 F.3d 1147
(9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 5-12, 14, 15, 24, 25, 29, 30

*Reg'l Rail Reorganization Act Cases*, 419 U.S. 102 (1974) . . . . . . . . . . . . . . . . 24

*Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14 (2020) . . . . . . . . . . . 26

*Schlothan v. Alaska*, 276 F.2d 806 (9th Cir. 1960) . . . . . . . . . . . . . . . . . . . . . . . 24

*Shimko v. Goldfarb*, 246 F. App'x 525 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . 14

*Star Editorial v. United States Dist. Court*, 7 F.3d 856 (9th Cir. 1993) . . . . . . . . 25

*United States v. $223,178.00 in Bank Account Funds*, 333 F. App'x 337
(9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Coburn*, No. 2:19-cr-00120 (KM), 2022 U.S. Dist. LEXIS
21429 (D.N.J. Feb. 1, 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Whole Woman's Health v. Smith*, 896 F.3d 362 (5th Cir. 2018) . . . . . . . . . . . . . . 24

*Will v. United States*, 389 U.S. 90 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Williams v. Dave Wright BGH, Inc.*, No. 19-300-SMR-SBJ, 2020 U.S. Dist.
LEXIS 261876 (S.D. Iowa Dec. 23, 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Zobel v. Williams*, 457 U.S. 55 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

**Rules and Statutes**

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

28 U.S.C. § 1292(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

28 U.S.C. § 1292(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

28 U.S.C. § 1651 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Federal Rule of Civil Procedure 26 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Federal Rule of Civil Procedure 45(d)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Federal Rule of Civil Procedure 45(e)(2)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Federal Rule of Civil Procedure 72(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Federal Rule of Appellate Procedure 21 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Idaho Code § 18-623 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Idaho Code § 74-101(15) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Idaho Code § 74-126(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Idaho House Bill 98 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 22, 23

Idaho House Bill 242 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 22, 23

iv

***Other Authorities***

Federal Rule of Civil Procedure 26(b) Advisory Committee Notes (1993) . . . . . 26

# Introduction

Right to Life of Idaho, Inc. ("**RLI**"), a non-party dragged into the underlying case by its ideological opponent's demand for its private, strategic, political advocacy documents, is entitled to mandamus relief from the district court's order upholding the demand. That opponent, Northwest Abortion Access Fund, and the other plaintiffs, Lourdes Matsumoto and Indigenous Idaho Alliance (collectively, "**Challengers**"), served a subpoena on RLI ("**RLI Subpoena**"), seeking private communications that lie at the heart of both RLI's strategy and the First Amendment; RLI moved to quash ("**Motion**"). Although this Court's precedent, *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010), required the district court to grant the motion, protecting RLI's First Amendment rights in light of RLI's clear factual showing of First Amendment chill—an even clearer showing than that made in *Perry*—the district court declined to do so. *See* Order, D.[1] 108 (Ex. 1) ("**Order**"). Accordingly, mandamus relief is necessary.[2]

"[A] particularly injurious or novel privilege ruling" warrants a "petition . . . for a writ of mandamus." *Mohawk Indus. v. Carpenter*, 558 U.S. 100, 101 (2009)

---

[1]RLI uses "D." to refer to entries in the district court's docket.

[2]Because the Order was issued by the magistrate judge, D. 108 (Ex. 1), 15, RLI moved for Article III judge review under Federal Rule of Civil Procedure 72(a). Although that rule does not limit its application to cases in which the parties have not consented to the magistrate judge, the district court denied Rule 72 relief on the basis of consent. D. 111. Accordingly, this matter is ripe for review.

(citing *Cheney v. United States Dist. Court for D. C.*, 542 U.S. 367, 380 (2004)). Because the district court's refusal to protect RLI's First Amendment rights is gravely injurious, RLI so petitions this Court.

When a traditional appeal is unavailable, mandamus is a mechanism by which appellate courts may prevent "a clear abuse of discretion." *Cheney*, 542 U.S. at 380. The "extraordinary" nature of such writs, *Kerr v. United States Dist. Court for N. Dist. of Cal.*, 426 U.S. 394, 402 (1976), does not require "an unduly narrow and technical understanding" of when they should issue, *Will v. United States*, 389 U.S. 90, 95 (1967). Instead, this Circuit uses five simple factors ("**Mandamus Factors**") to determine when they should issue.

This Court found that it was appropriate to issue a writ of mandamus in *Perry*, a remarkably similar case. 591 F.3d at 1159. The Mandamus Factors remain present here. Accordingly, this Court should grant a writ of mandamus.

## Statement of Jurisdiction

This Court has jurisdiction over this Petition pursuant to the All Writs Act, 28 U.S.C. § 1651, and Rule 21 of the Federal Rules of Appellate Procedure.

## Relief Sought

RLI requests that this Court issue a writ of mandamus reversing the Order and requiring the district court to grant the Motion and quash the RLI Subpoena.

**In Re: Right to Life of Idaho, Inc.**     2

## Issues Presented

**1.**     Whether the district court erred in requiring a privilege log to assert First Amendment privilege.

**2.**     Whether the district court erred in finding RLI's declaration insufficient to establish First Amendment privilege when this Court previously found a less specific declaration sufficient.

**3.**     Whether the district court erred in dismissing RLI's declaration as conclusory.

**4.**     Whether the district court erred in requiring a privilege log, in this motion to quash case, because privilege logs are required in protective order cases.

**5.**     Whether the district court erred in finding the subjective motivations of individual legislators relevant and discoverable in an interstate travel claim.

**6.**     Whether the district court erred in finding no undue burden is imposed by discovery demands that (1) are overbroad both temporally and in subject matter, and (2) seek documents that could be obtained elsewhere with no burden; and in issuing a revised demand with the same problems.

## Underlying Facts and Procedural History

On July 11, 2023, Challengers filed their Complaint, suing Idaho Attorney General Raúl Labrador ("**Idaho**") to challenge Idaho Code § 18-623 ("**abortion**

In Re: Right to Life of Idaho, Inc.     3

**trafficking law**"), first introduced on February 7, 2023 (Idaho House Bill 98 ("**H.B. 98**")), and later re-introduced as House Bill 242 ("**H.B. 242**"). Compl., D. 1 (Ex. 2), ¶ 11. Challengers alleged that the law (**1**) violates due process as a result of vagueness (Claim I), *id.* at ¶¶ 90–101, (2) burdens interstate and intrastate travel (Claims II and III), *id.* at ¶¶ 102–121, and (3) infringes on First Amendment rights (Claim IV), *id.* at ¶¶ 122–132.

The district court granted in part and denied in part Idaho's motion to dismiss and granted a preliminary injunction. *Matsumoto v. Labrador*, 122 F.4th 787, 796 (9th Cir. 2024). Idaho appealed. *Id.* This Court reversed certain findings and affirmed others, *id.* at 816, but declined to review the "denial of the motion to dismiss as to the interstate travel claim," *id.* at 796 n.6, which is the claim to which Challengers contend the RLI Subpoena is relevant, *e.g.*, Opp'n, D. 87, 13.

RLI is not a legislative agency; it does not employ legislators. Instead, it is a non-profit, volunteer organization dedicated to advocating for the unborn through education and legislation. Mem. Supp. Mot. of RLI Quash Subpoena, D. 72-1, 5 ("**Mem.**"). It is the Idaho affiliate of National Right to Life Committee, Inc. ("**NRLC**"), the nation's largest pro-life organization, which also works through education and legislation to advance the rights of the unborn. *Id.* The issues raised have nothing to do with RLI, a stranger to the case. Nonetheless, RLI's policy opponent dragged RLI into the case in order to peruse its internal documents and

private, confidential communications—documents that, as explained below, lie at the heart of the First Amendment. Specifically, Challengers demanded two categories of documents ("**Narrowed Requests**"):[3]

> 1. Communications with Idaho legislators or legislative staff concerning H.B. 242 or H.B. 98, including any attachments, talking points, or materials prepared *for dissemination to* legislators; and
> 2. Documents created for the purpose of communicating with legislators about those "abortion trafficking" bills like H.B. 242 and H.B. 98—such as drafts of model language, position summaries, or legislative fact sheets—*to the extent such materials were shared externally or intended for legislative audiences*.

D. 72-4 ("**Narrowing Letter**"), 1 (emphases in original).

RLI moved to quash these demands on the basis of First Amendment privilege, lack of relevance, overbreadth, and undue burden. Mot. of RLI Quash Subpoena, D. 72 ("**Motion**"); Mem. Supp. Mot., D. 72-1 ("**Mem.**"). It explained that under well-established precedent, where compliance with a demand for documents would arguably chill First Amendment speech or association, the documents are protected by First Amendment privilege. *Id.* at 4–8 (citing, *inter alia*, *Perry*, 591 F.3d at 1160; *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449 (1958); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 602, 616 (2021)). It also demonstrated that this privilege can apply to external documents, as district courts within this circuit and other circuit courts have recognized. *Id.* at 9–11

---

[3] The RLI Subpoena, D. 72-3 (Ex. 3), contained broader and more demands, but counsel for Challengers proposed the Narrowed Requests after RLI sent its letter of objections to the RLI Subpoena.

(citing various cases). Finally, it explained that speech like RLI's—advocacy about a major legal issue—is "core political speech" at the heart of the First Amendment and thus easily merits First Amendment protection. *Id.* at 6 (citing, *inter alia*, *Buckley v. Am. Constitutional Law Found.*, 525 U.S. 182, 186–87 (1999); *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 347 (1995)).

Where a party has shown "arguable" First Amendment chill, there is a prima facie case of First Amendment privilege and the burden shifts to the discovery proponent to show that the need for the discovery outweighs the burden it would impose ("**Balancing Test**"). *Perry*, 591 F.3d at 1160–61. To satisfy this burden, the discovery must be highly relevant, must not impose an undue burden, and must be obtained by other sources if available with less burden. *Id.*; *see also* Mem., D. 72-1, 13–16. Challengers did not persuasively dispute the applicability of First Amendment privilege or meet their Balancing Test burden to overcome RLI's prima facie case of privilege. *Infra*. Nonetheless, rather than granting the Motion, the district court simply set forth a narrowed demand ("**Revised Demand**") that suffers from the same problems, and demanded either production of the documents subject to same or, alternatively, for RLI to submit objections and a privilege log. Order, D. 108 (Ex. 1), 15–16; *id.* at 7.

This Court should grant mandamus, reverse the Order, and require the district court to quash the RLI Subpoena for the following reasons.

**In Re: Right to Life of Idaho, Inc.**      6

# Argument for Issuance of Writ

The Mandamus Factors are:

(1) whether the petitioner has no other means . . . to obtain the desired relief [("**Other Means Factor**")]; (2) whether the petitioner will be damaged . . . in any way not correctable on appeal [("**Harm Factor**")]; (3) whether the district court's order is clearly erroneous as a matter of law [("**Clear Error Factor**")]; (4) whether the district court's order is an oft repeated error [("**Repeated Error Factor**")] . . . ; and (5) whether the district court's order raises new and important problems or issues of first impression [("**New Problem Factor**")]. The factors serve as guidelines, a point of departure . . . . Not every factor need be present at once. However, the absence of the third factor, clear error, is dispositive.

*Perry*, 591 F.3d at 1156 (quotation marks, citations omitted).[4] All five factors are present here.

## I. The Order contains numerous clear errors.

Because the Clear Error factor is dispositive, RLI begins there.

The district court's Order contains numerous clear errors. The district court clearly erred, *inter alia*, in finding that a privilege log is required for a prima facie case, in finding that the declaration submitted by RLI's president was conclusory, and in finding that Challengers satisfied their burden under the "heightened

---

[4]The fourth factor may also exist where repetition of the error is *likely*: "the fourth and fifth factors can both be present when a procedural rule is being applied in a new context" when the error is "likely to be oft-repeated." *Kirkland v. United States Bankr. Court for the Cent. Dist. of Cal. (In re Kirkland)*, 75 F.4th 1030, 1051 (9th Cir. 2023) (quotation marks and citations omitted) (emphasis added).

relevance" standard of the Balancing Test, *Perry*, 591 F.3d at 1164. Accordingly, mandamus should be granted and the Order's denial of the Motion reversed.

**A. The Order errs in requiring a privilege log to assert RLI's privilege.**

All that is required to demonstrate a prima facie case of First Amendment privilege is a factual showing that compelled disclosure will *possibly* "have a deterrent effect on . . . protected activities." *Perry*, 591 F.3d at 1162 (citing, *inter alia*, *NAACP*, 357 U.S. at 460–61). RLI submitted the Declaration of Emily Naugle, D. 93-1 (Ex. 4) ("**Naugle Declaration**"), which clearly explained the First Amendment chill that would result from enforcement of the Narrowed Requests. The Naugle Declaration stated plainly that the Narrowed Requests sought "*private* communications with legislators or their staff" as well as purely internal documents, *id.* at ¶ 7 (emphasis added), that "these private conversations . . . lie at the heart of [RLI's] strategy"[5] and that disclosure thereof "would [] gravely harm[ RLI] in numerous ways," *id.* at ¶ 8, which it listed explicitly, *id.* at ¶¶ 9–14.

One of the listed harms was the critical fact that "[l]egislators would be less willing to communicate with RLI, gravely harming RLI" in this essential purpose. *Id.* The declaration also noted, *inter alia*, that donors would be deterred, and opponents advantaged, if demands for "RLI's private strategic communications"

---

[5]It can be no surprise that private communications with legislators, by an entity dedicated to "advanc[ing] legislation favorable to its cause, one of its most essential purposes," *id.* at ¶ 9, are strategic. This satisfies *Perry*'s limited holding applying to private, strategic communications. *Infra* n.19.

with legislators were enforced. *Id.* at ¶¶ 10, 13. And it made clear the non-speculative nature of the chill, noting that discussions had already occurred to address not only how it "would need to change its communications," but also the basic fact that compelled disclosure would "stifle[]" its "ability to conduct essential communications." *Id.* at ¶ 14. Those statements showed a certainty of chill, easily surpassing the Supreme Court's requirement of mere *arguable*, *possible* First Amendment chill for a prima facie case, Mem., D. 72-1, 11.

*Perry* proves this conclusion. Under *Perry*, the district court clearly erred in finding that such statements were not sufficient to show First Amendment privilege over "communications . . . with Idaho legislators[.]" Order, D. 108 (Ex. 1), 8–9. While the Order reasoned *Perry* requires a privilege log to make a prima facie case, *id.* at 7, that is clearly erroneous for a simple reason: *Perry* says the opposite. The *Perry* Court found that there *was* a prima facie case of First Amendment privilege as a result of a declaration even less specific than the one submitted by RLI *when no privilege log had been submitted*. 591 F.3d at 1163–64.

Specifically, in *Perry*, ProtectMarriage.com-Yes on 8 ("**ProtectMarriage**") (an actual party to the case as a defendant-intervenor, unlike non-party RLI, to whom even greater protection applies, Mem., D. 72-1, 15–16), a proponent of California's Proposition 8, was demanded to produce "[a]ll . . . communications referring to Proposition 8," which the parties understood to encompass "internal

campaign communications[.]" *Id.* at 1153. ProtectMarriage submitted a declaration stating that compelled disclosure of "personal, non-public communications" would "drastically alter" communications and chill "willing[ness] to engage in such communications[.]" *Id.* at 1163. The *Perry* court found that that declaration established "a prima facie showing" of First Amendment chill resulting from disclosure of private, strategic communications. *Id.* at 1163–64, 1165 n.12.[6]

*Perry* clearly, then, did *not* hold that "'some form of privilege log is required'" merely to "assert the First Amendment privilege," *contra* Order, D. 108 (Ex. 1), 7 (citing 591 F.3d at 1153 n.1), but only that doing so *there* "would [not] impose an unconstitutional burden" where "some of [the documents] may be discoverable" upon a more "carefully tailored request for the production of highly relevant information[7] that is unavailable from other sources." 591 F.3d at 1165 n.13.

The critical fact that *Perry* found a prima facie case over the whole category of "internal campaign communications" even though *some* might have ultimately been discoverable (unlike this case, *supra* n.7) cannot be overlooked. In short, the

---

[6] It also found that the prima facie case had not been overcome and thus found discovery barred by First Amendment privilege. *Id.* at 1164–65.

[7] The Order requires production of only *one* category of information, and that category is not relevant *at all*. *Infra* Part I.D.1. Accordingly, the need for a privilege log in *Perry* is not present here. *Infra* Part I.C. Nor does *Perry*'s dicta stating that a privilege log was needed in that case negate its finding of First Amendment privilege or provide a basis for any court to reverse its analysis.

**In Re: Right to Life of Idaho, Inc.**      10

question is whether compliance with the *request* will result in chill—not whether compliance with some *aspect* thereof would (or would not) do so. Put another way, the fact that *some* documents at the fringes of a poorly-tailored request may "not implicate First Amendment associational interests" does *not* prevent a prima facie case.[8] That is only logical. If parties seeking privileged documents were relieved of the burden of overcoming a prima facie case by simply drafting their demands in a way that could be construed to encompass some nonprivileged materials, the privilege would be meaningless. Proper application of *Perry*'s analysis prevents such absurdity. Accordingly, the district court clearly erred in finding that *Perry* requires a privilege log to assert First Amendment privilege and therefore declining to grant the Motion. Order, D. 108 (Ex. 1), 7.

## B. RLI's declaration was more specific than that in *Perry*, was not conclusory.

### 1. *Perry* found a less specific declaration sufficient.

*Perry* also found that a declaration of precisely the sort RLI submitted—but *less* specific—was sufficient to merit such protection. *See supra* Part I.A (quoting the brief snippet considered in *Perry*, including non-detailed statement that the communications at issue were "personal" and "non-public"); *Perry*, 591 F.3d at 1163 (noting declaration was "lacking in particularity"). The Naugle Declaration,

---

[8]RLI does not concede that *any* of the documents demanded by the Revised Demand do not implicate the First Amendment, but instead notes this simply to demonstrate the district court's error.

signed by RLI's president, D. 93-1 (Ex. 4), ¶ 2, who is well aware of the effects that enforcement of the RLI Subpoena would have on RLI and those with whom it associates, *id.* at ¶ 4, sets forth precisely the same types of harm that the *Perry* Court found sufficient to create a prima facie case, and more. *Id.* at ¶ 6–14. The *Perry* Court did not doubt as "general" or "conclusory" the declaration's assertion that the discovery demand encompassed "personal, non-public communications." 591 F.3d at 1163; *contra* Order, D. 108 (Ex. 1), 8. The ruling that the Naugle Declaration was insufficient for a prima facie case was therefore clearly erroneous under *Perry*.

### 2. The Naugle Declaration is not general or conclusory.

While the Order's error under *Perry* concerning the Naugle Declaration warrants reversal, the Order's description of RLI's contentions as "conclusory," D. 108 (Ex. 1), 8, is also itself erroneous. The Order asserts that the Naugle Declaration's statements are "general references to 'private,' 'internal,' and 'strategic' communications and documents" that "do not demonstrate an arguable First Amendment infringement," *id.*, but this description makes no sense in light of the clear, specific descriptions of chill found throughout that declaration, D. 93-1 (Ex. 4), ¶¶ 9–14. More fundamentally, when a declaration's statements "are neither in the form of legal conclusions nor speculative, but are material facts based on . . . personal recollection," the statements *are not* "conclusory." *Orsini v.*

*O/S Seabrooke*, 247 F.3d 953, 960 n.4 (9th Cir. 2001) (finding claim that declaration was conclusory "without merit"); *see also United States v. $223,178.00 in Bank Account Funds*, 333 F. App'x 337, 338 (9th Cir. 2009).

Accordingly, the Order's characterizations cannot, consistent with Ninth Circuit precedent, establish that the declaration fails to show the documents are private. There can be little question whether the president of a small organization whose strategy revolves around its communications with lawmakers, who verifies knowledge under oath, knows whether its communications with legislators are "private." *See* D. 93-1 (Ex. 4), ¶¶ 4–5, 7–8 (asserting "personal knowledge," describing the communications sought as "private" and "at the heart of [RLI's] strategy"). The district court thus clearly erred by finding factual statements that were not legal conclusions or mere speculation, but were made with personal knowledge, to be conclusory.

Additionally, Challengers tacitly conceded the private nature of these communications in two ways. One, they argued that RLI's communications with legislators were *not* public, claiming they could not obtain them via public records request because "Idaho's public records law is not coextensive with . . . Rule 26." Pls.' Opp'n to Mot. and Mem., D. 87, 11 ("**Opp'n**"). Two, after RLI submitted the Naugle Declaration, Challengers did not attempt to rebut it, as they easily could have, *e.g.*, *Green Tech. Lighting Corp. v. Insure Idaho, Ltd. Liab. Co.*, No.

1:17-cv-00432-DCN, 2023 U.S. Dist. LEXIS 58520, at *40 (D. Idaho Mar. 31, 2023). The Naugle Declaration's descriptions of the private nature of the communications at issue therefore remain unchallenged.[9]

Nor was there any basis for such a conclusion independent of Challengers' arguments. The brevity of the Naugle Declaration's statement that RLI's communications with legislators concerning legislation are private, Naugle Decl., D. 93-1 (Ex. 4), ¶ 7, does not render it overly "general." *Contra* Order D. 108 (Ex. 1), 8. *See Shimko v. Goldfarb*, 246 F. App'x 525, 527 (9th Cir. 2007) (affidavit "lacking in detail" was not conclusory); *Perry*, 591 F.3d at 1163 (declaration was "lacking in particularity"). First, as noted, RLI's president plainly knows how RLI conducts communications at the heart of its strategy, which knowledge was sworn. Second, what further explanation could be needed? "Private" means "private"—between RLI and the legislator in question.[10] There is nothing further to specify.

---

[9] Additionally, the Order's "conclusory" assertion cannot reasonably be read as an indication that the communications might not in fact be strategic. Challengers never contended that RLI's communications with legislators are not strategic. *See generally* Opp'n, D. 87.

[10] RLI does not concede that privacy is required to invoke First Amendment privilege. To the contrary, the Supreme Court has said a "*possible* deterrent effect" is all that is required, and has never suggested external documents cannot satisfy that criteria—certainly not private documents like those sought here. Mem., D. 72-1, 9–11 (quoting *Bonta*, 594 U.S. at 616) (citing various cases finding external communications to be privileged).

In short, the statements of the Naugle Declaration are the opposite of general or conclusory. The district court's Order, based on clearly erroneous conclusions to the contrary, should be reversed.[11]

## C. The lower court imported protective order law into a motion to quash case.

Even if *Perry* had required a privilege log to assert First Amendment privilege, the district court would nonetheless have erred by importing that *protective order* analysis—which by its nature does not apply to motions to quash—into this case. A privilege log was necessary in *Perry* for a simple reason: a protective order was the relief sought, *not* an order quashing the subpoena. 591 F.3d at 1153. That protective order would apply only to very specific documents sought, not the whole trove. *Id.* at 1165 n.12. A privilege log was therefore necessary to assert which documents fell under those protections.

However, if a subpoena is quashed, as the RLI Subpoena should have been, no documents may be sought, so logging privilege would be redundant—an *added* burden in an analysis meant to *relieve* burden. The privilege log requirement applies only when a person is "withholding subpoenaed information"; a wholly

---

[11]Even if there were some reason to find the Naugle Declaration insufficient to establish the private nature of all of the documents at issue, under *Perry* the district court still should not have denied RLI's prima facie case, but instead should have found the First Amendment *does* protect documents that were shared only between RLI and legislators or legislative staff, while potentially permitting discovery of documents distributed more broadly. 591 F.3d at 1165 n.13. Accordingly, even if the district court had not erred in finding the Naugle Declaration conclusory, it still would have erred in failing to provide such relief.

different subsection governs motions to quash such that no information remains subpoenaed. *Compare* Fed. R. Civ. P. 45(e)(2)(A) *with* Fed. R. Civ. P. 45(d)(3).

Observing that a privilege log is not necessary to quash a subpoena that categorically infringes privilege is a judicial commonplace. Indeed, district courts within this Circuit, other circuit courts, and other district courts explicitly recognize the fact that a privilege log is not necessary when "it is apparent from the face of the subpoena" that privileged or protected information is sought.[12]

In short, RLI is "seeking to quash the subpoena[]; [it is] not producing documents. A privilege log is inapplicable here." *Broadband iTV*, 2015 U.S. Dist. LEXIS 51131, at *9. *Perry* found First Amendment privilege applicable to the

_____

[12] *See Jordan v. Comm'r, Miss. Dep't of Corr.*, 947 F.3d 1322, 1328 n.3 (11th Cir. 2020); *see also Broadband iTV, Inc. v. Hawaiian Telecom*, No. 15-mc-80053 HRL, 2015 U.S. Dist. LEXIS 51131, at *9 (N.D. Cal. Apr. 17, 2015); *see also, e.g., Hall v. Balt. Police Dep't*, No. 1:24-1137-RDB, 2025 U.S. Dist. LEXIS 26704, at *30–31 (D. Md. Feb. 13, 2025) (quoting *Garrity v. Gov. Bd. of Cariños Charter Sch.*, No. 20-340-MV/KK, 2021 U.S. Dist. LEXIS 133760, at *5 (D.N.M. July 19, 2021)) (a party may demonstrate privilege "without a privilege log where the challenged request is . . . necessarily seeking privileged information"); *Williams v. Dave Wright BGH, Inc.*, No. 19-300-SMR-SBJ, 2020 U.S. Dist. LEXIS 261876, at *6 (S.D. Iowa Dec. 23, 2020) (a "declaration . . . combined with [a] presentation of authority suffices to meet the burden to establish the . . . privilege," particularly where non-parties are concerned (citation omitted)); *Bresler v. Wilmington Tr. Co.*, No. PJM 09-2957, 2013 U.S. Dist. LEXIS 201311, at *8 (D. Md. Aug. 8, 2013) (where a party "object[s] to [] subpoenas *in toto*," "[t]here is no requirement that a privilege log be produced"); *accord United States v. Coburn*, No. 2:19-cr-00120 (KM), 2022 U.S. Dist. LEXIS 21429, at *12–13 (D.N.J. Feb. 1, 2022) (finding "categorical" privilege log "sufficient" as "a reasonable and less burdensome approach"; noting that when a subpoena's demands, "on their face, . . . would naturally yield a large volume of privileged documents," privilege claim need not be presented "document-by-document").

whole category of private, strategic documents sought therein. But *other* documents were sought in *Perry*, so relief was appropriately requested in the form of a protective order. The *only* documents at issue here are those that lie at the heart of RLI's strategy. A motion to quash was the proper avenue for relief. The district court's privilege log requirement was error and should be reversed.

**D. Challengers did not satisfy their burden to overcome RLI's privilege.**

Despite finding no prima facie case, the district court "proceed[ed] to discuss relevance . . . [under] the heightened relevancy standard of the First Amendment privilege test" and "whether less intrusive means of obtaining information exist," Order, D. 108 (Ex. 1), 9–10. While the court correctly found that "certain aspects of the Plaintiffs' proposed narrowed subpoena requests are overbroad and include materials that are not relevant," *id.* at 11, it otherwise clearly erred as to both relevance and undue burden.

**1. The documents sought are not relevant under any analysis.**

First, the district court erred in finding that "[c]ommunications . . . [with] Idaho legislators" were relevant and discoverable because they might show whether the abortion trafficking law was "intended to impede interstate travel," *id.* at 12, which errs in both the First Amendment privilege analysis and the relevance analysis under Federal Rule of Civil Procedure 26. The question is whether, in a case where no invidious discrimination is alleged, such documents may be used to

show legislative purpose; quite simply, they may not. Mem., D. 72-1, 13–15; Reply Supp. Mot., D. 93, 5–7 ("**Reply**"); *see also* Def.'s Mem. Resp. Mot., D. 88, 2–5 ("**Labrador Memorandum**"). The "general rule" is that "discovery of a legislator's subjective motivations" is prohibited. *Las Vegas v. Foley*, 747 F.2d 1294, 1298 (9th Cir. 1984). The Order asserts the Ninth Circuit has found evidence of lobbyists' role in legislation relevant. Order, D. 108 (Ex. 1), 13 (citing *Mi Familia Vota v. Fontes*, 129 F.4th 691, 727–28 (9th Cir. 2025)). But rather than discussing, even minimally, the fact that RLI had already shown that such evidence is relevant only in cases where invidious discrimination is alleged (as it was in *Mi Familia Vota*, 129 F.4th at 724–25), but *not* in simple right to travel cases, the Order simply ignored those arguments—and the binding precedent adduced therein. *See generally* D. 108 (Ex. 1).

Challengers also failed to adduce any case finding that an interstate travel claim is comparable to invidious discrimination cases and therefore permits inquiry into subjective motivations. *See* Opp'n, D. 87, 9–11; *see also* Labrador Mem., D. 88, 3 (noting that Challengers "cite no case that applies the *Arlington Heights* framework to the right to travel and make[] no effort (despite recognizing that *Arlington Heights* is an Equal Protection case, [D.] 87 at 13) to connect the dots between their cited cases on relevant legislative history and the right to interstate travel"). So there was no basis for the Order to overlook this

distinction.[13] The Order's acknowledgment that "evidence of legislative motives has bounds," D. 108 (Ex. 1), 12–13, only highlights the error since this case is precisely where those bounds apply. Overlooking that fact was clear error.

Moreover, even *if* evidence of invidious discrimination were relevant here, the district court adduced no basis for declining to apply the "general rule," which often applies "[e]ven where a plaintiff must prove invidious purpose or intent, as in racial discrimination cases[.]" *Foley*, 747 F.2d at 1298. The Order's failure to deal with this aspect of *Foley* is particularly problematic since this is *not* a case in which invidious legislative motive must be proven and thus is nowhere near the high bar required to make subjective motivations of individual legislators relevant. As *Foley* clearly explains, it is *not* true that a law serving appropriate governmental interests "will be invalidated if those who voted for it had illicit

---

[13] *Attorney Gen. of N.Y. v. Soto-Lopez*, 476 U.S. 898, 912, 916 (1982) (Burger, C.J., concurring in the judgment; White, J., concurring in the judgment)) (a plurality opinion on equal protection grounds), cited in the Order, D. 108 (Ex. 1), 11, 13, surely cannot provide the basis: it only shows the "primary objective" of a law implicating the right to travel may be relevant when equal protection issues are also raised, and does not show that the subjective motives of individual legislators are relevant even then. *Id.* at 903 (citing *Zobel v. Williams*, 457 U.S. 55, 62 n.9 (1982)). *Zobel*, too, was fundamentally about equal protection, and was clear that the "purposes" it considered were the *legislature's* purposes—and only those that were objective—not the subjective motivations of individual legislators. 457 U.S. at 61 n.7, 67. The fact that equal protection cases, in some circumstances, avoid the rule against discovery of subjective motives of legislators, does not change the fact that there is *no precedent* for breaking that rule in *this* case, which has no equal protection claim, *see generally* Compl., D. 1 (Ex. 2).

motives." 747 F.2d at 1298. So "the general rule" applies here, *id.*, and finding otherwise was clear error, contrary to *Foley* and the other law cited by RLI.

To hold that inquiry into the motivations of individual legislators is permissible in *any* case involving some allegation of an inappropriate legislative motive is to gut the binding precedent clearly prohibiting same *except* in very particular cases with very particular circumstances. The district court's holding, however, does just that. That holding was error, and should be reversed both under the First Amendment privilege analysis and independently under Rule 26.

### 2. The Order imposes an undue burden.

The Order's cursory examination of the burden on RLI was also erroneous. The Order contends that Challengers showed that there are no less intrusive "means of obtaining the information[.]" D. 108 (Ex. 1), 13–14 (citing D. 87 at 11–12, 15; D. 98–104).[14] That is not the case. Challengers relied on a misunderstanding of Idaho's Public Records Act, alleging that Challengers would

---

[14]RLI will primarily address Challengers' arguments posited in the Opposition, D. 87, for two reasons. First, that is Challengers' only brief directly addressing the Motion. Second, the Order's citation to D. 98–104 is difficult to understand. Most of the filings in that range have nothing to do with Challengers' attempt to show other sources of information. *E.g.,* D. 102 (Non-Party RLI's Request for Oral Argument on Motion); D. 103 (incorrectly filed entry). The only docket entry containing argument marginally on point, Pls.' Opp'n to Non-Party Idaho State Representative Barbara Ehardt's Mot. Quash, D. 101, merely acknowledges the then-pending Motion and does not address RLI's arguments, such as the privacy of RLI's communications or the availability of public records requests for any communications available thereunder. *Id.* at 10–11.

have been required to "mak[e] 105 public records requests" in order to obtain from legislators the

information sought, D. 87, 11, while in reality only one request would have been required, Reply, D. 93, 7–8 (citing Idaho Code §§ 74-101(15), -126(1)).[15] That aside, Challengers' argument is not even relevant to the inquiry, which is whether there is a *less burdensome* means of obtaining the information. Because responding to public records requests is integral to legislators' jobs, and not done under compulsion, it cannot be considered a burden at all. *Id.* at 7. Compare this with the undue burden of *compelling* small, non-profit RLI to comb through *years* of records concerning major legislation.[16] The Order clearly erred in finding no undue burden despite these two facts.

Challengers argued that "[t]he scope of disclosure required by Idaho's public records law is not coextensive with that required by Rule 26." D. 87, 11. But again, RLI showed this argument's flaw. Reply, D. 93, 8. Challengers' contention that some of the records it seeks may not be available via public

---

[15]RLI additionally noted that, even if 105 public records requests *were* required, the simple copy-and-pasting of the request 105 times would be far less burdensome than for a small nonprofit to comb through years of records. *Id.* at 8.

[16] RLI also rebutted Challengers's contention that the "timeframe" of receiving responses to public records requests—generally, three days—might be too slow, particularly in light of Challengers' own delay. Opp'n, D. 87, 11; Reply, D. 93, 8, 8 n.8. The Order, declining to address this point, provides no reason to think that the alleged timing issue might burden Challengers.

records request constitutes an admission that those records are, in fact, not public but private. *Id.* This essentially concedes RLI's prima facie case of First Amendment privilege, verifying RLI's strong interest in maintaining the documents' privacy. The Order failed to address this problem. Because this problem clearly show that Challengers fail to meet their burden, that is clear error.

Finally, the Order errs in finding that "RLI's engagement with Idaho legislators . . . lessens the weight of RLI's status as a nonparty given the [documents'] relevance[.]" D. 108 (Ex. 1), 14. This constitutes error, first, because the documents are *not* relevant, and second, because it misapprehends the basis for protecting non-parties. Non-parties are not afforded special protections simply because they have nothing to do with the underlying facts. Such a rule would be meaningless since the only reason non-parties ever become involved with litigation is because they *do* have something to do with the litigation. The district court clearly erred by finding that RLI is not subject to protection as a non-party simply because it had something to do with the legislation at issue.

**E. The Revised Demand does not fix the overbreadth.**

Although the Order's Revised Demand narrowed Challengers' demands, D. 108 (Ex. 1), 15, it did not remedy their overbreadth. First, the Order still requires production of "[all] [c]ommunications with Idaho legislators or legislative staff concerning H.B. 242 or H.B. 98[.]" *Id.* at 15. This plainly encompasses documents

having nothing to do with the intent of the abortion trafficking law. For example, an invitation stating, "You are invited to a reception about H.B. 242," would have nothing to do with said intent, yet the Order's demand would clearly encompass same. This is precisely the sort of overbreadth that is prohibited.

RLI also noted that Challengers' demands suffered from temporal overbreadth, a problem the Order does not address at all. *See generally* D. 108 (Ex. 1). The demands' temporal scope encompassed communications occurring even more than two years earlier than H.B. 98, "the earliest version of the" law, was introduced. D. 72-1, 20. Rather than justify this, Challengers simply alleged that *NRLC* (not RLI) proposed legislation before the law was passed, but even that allegation left a year-and-a-half of overbreadth even if it *had* been RLI who proposed the legislation. Reply, D. 93, 11. Yet it was not, so the two-plus year overbreadth remained. The district court ignored this issue.

The temporal overbreadth of Challengers' demands—and the Revised Demand—is also present in their demand for documents *after* the relevant timeframe. The RLI Subpoena demanded documents "to the present," i.e., the date of service, September 12, 2025. D. 72-3 (Ex. 3), 1, 7. But H.B. 242 (the "amended and re-introduced" bill) was passed on March 30, 2023. Compl., D. 1 (Ex. 2), ¶ 11. While RLI has already shown that individual legislators' communications are not relevant at all, it is also true that there is no conceivable basis by which *post-*

*enactment* statements could affect the legislative intent of the abortion trafficking law: "post-passage remarks of legislators" do not "change the legislative intent[.]" *Reg'l Rail Reorganization Act Cases*, 419 U.S. 102, 132 (1974); *see also Schlothan v. Alaska*, 276 F.2d 806, 815 (9th Cir. 1960). Accordingly, the district court clearly erred by entering a Revised Demand that would not be justified in subject matter or timeframe even if the court's relevance analysis were correct.

In sum, the Order contains numerous clear errors. Accordingly, for all of the foregoing reasons, the Clear Error Factor is satisfied on numerous bases.

## II. RLI has no other means of relief.

The Other Means Factor is also satisfied. In *Perry*, the Court assumed "that no collateral order appeal is available" against a discovery order on First Amendment privilege grounds.[17] 591 F.3d at 1157 (citing 28 U.S.C. §§ 1291, 1292(a)(1) and 1292(b); *Foley*, 747 F.2d at 1297) (quotation marks omitted). Mandamus review is "appropriate for discovery matters which otherwise would be reviewable only on direct appeal after resolution on the merits." *Foley*, 747 F.2d at 1297; *see also Perry*, 591 F.3d at 1157 (quoting same); *Admiral Ins. Co. v. U.S. Dist. Court*, 881 F.2d 1486, 1488 (9th Cir. 1989).

---

[17]Should this Court find it appropriate to assume otherwise today (when at least one circuit has found that First Amendment privilege asserted by a third party warranted application of the collateral order doctrine, *Whole Woman's Health v. Smith*, 896 F.3d 362, 368 (5th Cir. 2018)), it should construe this petition as a collateral order appeal and reverse the Order due to its numerous clear errors.

*Perry* noted that, although direct appeal of non-final decisions is permitted in rare cases under the collateral order doctrine, there was "uncertainty about the availability of collateral order review" following *Mohawk*, which found collateral order review was not available against discovery orders denying claims of attorney-client privilege. 591 F.3d at 1156. Therefore, despite noting distinctions between the analysis as it pertained to attorney-client privilege versus First Amendment privilege, this Court "assume[d] . . . that discovery orders denying claims of First Amendment privilege are not" directly appealable. *Id.* at 1155–56.

As of 2011, this question remained undecided in the Ninth Circuit, *Anonymous Online Speakers v. United States Dist. Court*, 661 F.3d 1168, 1173 n.1 (9th Cir. 2011), and it appears this Court has not addressed the question since then. Accordingly, the mandamus analysis plainly favors granting mandamus under this factor since this case closely echoes *Perry*.

### III. The Harm Factor is satisfied.

The Harm Factor strongly favors mandamus. It is an oft-repeated proposition in this Court that where a district court erroneously "compel[s] disclosure, any damage the [producing entity] suffer[s] would not be correctable on appeal." *Star Editorial v. United States Dist. Court*, 7 F.3d 856, 859 (9th Cir. 1993); *see also Perry*, 591 F.3d at 1157 (quoting same); *Admiral Ins.*, 881 F.2d at 1491. This uncorrectable damage is severe. Complying with compelled "discovery

[] against [a] claim of privilege destroys [the] right sought to be protected."
*Id.* at 1491 (citing *In re von Bulow*, 828 F.2d 94, 98 (2d Cir. 1987)). That is
because an order that "brushes aside a litigant's claim of a privilege not to
disclose" and compels production of information, "leaves only an appeal after
judgment as a remedy," an "inadequate" remedy that occurs only after the right of
privilege is "destroy[ed]." *In re von Bulow*, 828 F.2d at 98. This result is
particularly repugnant here. The "'loss of First Amendment freedoms, for even
minimal periods of time, unquestionably constitutes irreparable injury.'"
*Fellowship of Christian Athletes v. San Jose Unified Sch. Dist.*, 82 F.4th 664, 694
(9th Cir. 2023) (en banc) (quoting *Roman Cath. Diocese of Brooklyn v. Cuomo*,
592 U.S. 14, 19 (2020)).

For three reasons, it is no retort that the Order gives RLI the option of
propounding further objections and a privilege log. First, where a motion to quash
should have been granted, relieving a nonparty of the burden of litigation, it is
plain that the nonparty is unduly burdened if required nonetheless to continue
therein, particularly when that means searching and describing years' worth of
irrelevant communications, *supra* Parts I.D.1, I.E (discussing total irrelevance of
documents at issue, including timeframe). Even outside of the motion to quash
context, the rules do not require a privilege log. Fed. R. Civ. P. 26(b) Advisory
Committee Notes (1993) (noting that defined information is not required "when a

party asserts a claim of privilege," as providing same "may be . . . unduly burdensome"). *In* the motion to quash context, particularly in light of *Perry*, it is plain that being required to undergo that process is an undue burden. Nor can that burden be corrected on appeal. The time spent combing through years of documents cannot be returned no matter the result.[18]

Second, as established above, the Balancing Test puts the burden on the discovery *proponent* after a prima facie case of First Amendment privilege is made. This protects the substance of the rights at stake by giving litigants claiming First Amendment privilege a meaningful chance to assert same. A framework that precludes "a fair consideration" of the First Amendment claim is, by definition, "unduly strict." *Buckley v. Valeo*, 424 U.S. 1, 74 (1976); *see also Brock v. Local 375, Plumbers Int'l Union*, 860 F.2d 346, 350 (9th Cir. 1988) (citing same in First Amendment balancing context). A discovery *proponent* who believes a prima facie case of First Amendment privilege can be overcome bears the burden of

---

[18] Considering the context in which this privilege log was required—in which RLI had *already* noted, in a sworn declaration, the private and strategic nature of the documents sought—it is apparent that the district court's requirement of a privilege log demands the disclosure of further details, such as names and highly specific descriptions of subject matter. Accordingly, another fundamental consideration concerning the Harm Factor is the fact that the very chill RLI seeks to avoid would be *caused* be producing a privilege log of the sort the district court requires. That is, there is no reason to doubt that legal advocacy organizations would be chilled by the fact that they may have to comb through years of irrelevant documents in order to describe them in a log, even though they are categorically privileged, just as they would be chilled by compelled production.

showing heightened relevance and unavailability from other sources. Requiring the First Amendment-protected party to prove that the documents at issue are *not* highly relevant and *are* available from other sources would essentially render the privilege a nullity, a grave harm.

Third, the fundamental fact is that the Order exemplifies such nullification of First Amendment privilege. As described above, the district court's failure to apply *Perry* resulted in its holding that RLI's declaration that the documents at issue are private and strategic—assertions not meaningfully challenged by any party—was effectively meaningless. If RLI's sworn declaration statements, which were non-conclusory and more specific than those found sufficient in *Perry*, *supra* Part I.B.1, were not found sufficient to assert First Amendment privilege, by the same logic the district court will not find a privilege log asserting the same basis of First Amendment privilege sufficient. This petition is therefore necessary to preserve the very privilege that would be considered—and would be ultimately denied—in a privilege log. In other words, First Amendment objections that clearly should have been sustained under *Perry* were *already* erroneously overruled. That brings us back to the main point: RLI is harmed by the district court's order because it requires RLI—*whether it makes further objections or not*—to produce First Amendment privileged documents since its objections have already been overruled.

**In Re: Right to Life of Idaho, Inc.**     28

Finally, the Harm Factor encompasses "substantial costs imposed on the public interest." *Perry*, 591 F.3d at 1158. That analysis in this case echoes *Perry*:

> This risk applies not only to the official proponents . . . but also to the myriad social, economic, religious and political organizations that publicly support or oppose [legislation]. The potential chilling effect on political participation and debate is therefore substantial . . . . Declining to exercise [] mandamus jurisdiction in this case, therefore, would imperil a substantial public interest . . . .

*Id.* at 1158 (quotation marks and citation omitted).

As the foregoing shows, the injury RLI would sustain by being forced to comply with the Order is precisely the sort of injury that has often been held to warrant mandamus relief. Yet, as an injury to a precious Constitutional right, it is also more severe than the injury at issue in many such cases. Even temporally minimal compelled compliance would certainly constitute an irreparable injury. The Harm Factor therefore weighs heavily in favor of granting the writ.

## IV. The Repeated Error and New Problem Factors are satisfied.

Finally, the last two factors are also satisfied since the district court's clear error presents a new problem that is likely to be oft-repeated. While this case largely echoes *Perry*, it is different insofar as it concerns a motion to quash, rather than a motion for protective order. Accordingly, while *Perry*'s *application* to this circumstance is clear, it remains true that the district court erred because it misapprehended *Perry* because it does not address motions to quash. As in *Perry*,

then, it is true here that this case presents "the need to resolve a significant question of first impression" and that "this novel and important question may repeatedly evade review because of the collateral nature of the discovery ruling." 591 F.3d at 1158–59; *see also In re Kirkland*, 75 F.4th at 1051.

Additionally, it appears this Court has not directly addressed whether private, but not strictly internal, communications may ever be protected by First Amendment privilege.[19] That remains, then, an important issue of first impression which may repeatedly evade review if not addressed here. Accordingly, the Repeated Error Factor and the New Problem Factor are satisfied.

## Conclusion

For all of the foregoing reasons, this Court should grant mandamus, reverse the Order, and require the district court to quash the RLI Subpoena.

---

[19] *Perry* emphasized that private, strategic communications *are* protected; to the extent it held certain external messages may not be, it emphasized that that was because the external messages at issue *were not strategic*. *Perry*, 591 F.3d at 1165 n.12. In this case, it is established by sworn declaration that the communications *are* strategic; indeed, the formulation of legislation is at the *core* of RLI's strategy. *Supra* Part I.A. This case therefore represents the perfect opportunity for this Court to make clear that the Ninth Circuit takes the Supreme Court's rule seriously—that First Amendment chill, not strictly internal communication, is what is required to invoke First Amendment privilege.

Dated: January 16, 2026   Respectfully submitted,

           /s/ James Bopp, Jr.
           James Bopp, Jr., Ind. Bar No. 2838-84
           Joseph D. Maughon, Va. Bar No. 87799
           **THE BOPP LAW FIRM, PC**
           *The National Building*
           1 South Sixth Street
           Terre Haute, IN 47807-3510
           Tel: (812) 232-2434
           Fax: (812) 235-3685
           Email: jboppjr@aol.com
              jmaughon@bopplaw.com

           *Attorneys for Petitioner Non-Party Right to Life of Idaho, Inc.*

# Certificate of Compliance

I hereby certify that the foregoing Petition for Writ of Mandamus contains 7,797 words as calculated by the word count function of WordPerfect 2020. It therefore complies with the length limitations of Fed. R. App. P. 21(d) and Ninth Circuit Rule 21-2(c), because, excluding the parts listed by Fed. R. App. P. 21(a)(2)(C) and 32(f), it does not exceed 30 pages or 7,800 words.


Dated: January 16, 2026          /s/Joseph D. Maughon
                                 James Bopp, Jr., Ind. Bar No. 2838-84
                                 Joseph D. Maughon, Va. Bar No. 87799
                                 **THE BOPP LAW FIRM, PC**
                                 *The National Building*
                                 1 South Sixth Street
                                 Terre Haute, IN 47807-3510
                                 Tel: (812) 232-2434
                                 Fax: (812) 235-3685
                                 Email:  jboppjr@aol.com
                                         jmaughon@bopplaw.com
                                 *Attorneys for Petitioner Non-Party Right to Life of Idaho, Inc.*

# Certificate of Service

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the Appellate Case Management System (ACMS) on January 16, 2026.

I further certify that on January 16, 2026, a notice of the filing of the foregoing (including a complete copy of the foregoing) will be filed in the underlying proceeding in the United States District Court for the District of Idaho in compliance with Federal Rule of Appellate Procedure 21(a)(1), and that all parties to the proceeding will be served with that notice through the district court's CM/ECF system.

Dated: January 16, 2026        /s/Joseph D. Maughon
                                    James Bopp, Jr., Ind. Bar No. 2838-84
                                    Joseph D. Maughon, Va. Bar No. 87799
                                    **THE BOPP LAW FIRM, PC**
                                    *The National Building*
                                    1 South Sixth Street
                                    Terre Haute, IN 47807-3510
                                    Tel: (812) 232-2434
                                    Fax: (812) 235-3685
                                    Email:   jboppjr@aol.com
                                                  jmaughon@bopplaw.com
                                    *Attorneys for Petitioner Non-Party Right to Life of Idaho, Inc.*

# Disclosure Statement

Pursuant to Federal Rule of Appellate Procedure 26.1, RLI hereby states that it is a nonprofit organization and that no parent corporation or publicly held corporation owns 10% or more of its stock.

Dated: January 16, 2026

/s/Joseph D. Maughon
James Bopp, Jr., Ind. Bar No. 2838-84
Joseph D. Maughon, Va. Bar No. 87799
**THE BOPP LAW FIRM, PC**
*The National Building*
1 South Sixth Street
Terre Haute, IN 47807-3510
Tel: (812) 232-2434
Fax: (812) 235-3685
Email:  jboppjr@aol.com
            jmaughon@bopplaw.com
*Attorneys for Petitioner Non-Party Right to Life of Idaho, Inc.*

# Statement of Related Cases

Pursuant to Circuit Rule 28-2.6, counsel for RLI states that it is aware of no

pending related cases.

Dated: January 16, 2026

/s/Joseph D. Maughon

James Bopp, Jr., Ind. Bar No. 2838-84
Joseph D. Maughon, Va. Bar No. 87799
**THE BOPP LAW FIRM, PC**
*The National Building*
1 South Sixth Street
Terre Haute, IN 47807-3510
Tel: (812) 232-2434
Fax: (812) 235-3685
Email:  jboppjr@aol.com
        jmaughon@bopplaw.com
*Attorneys for Petitioner Non-Party Right to
Life of Idaho, Inc.*